IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 18 CR 433 (JW) |
| v. | The Hon. Jack Weinstein |
| STANISLAW PSZENICZNY, | |
| Defendant. | |

**DEFENDANT STANISLAW PSZENICZNY'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT**

David Cohen
Cohen Forman Barone
950 Third Ave., 11th Flr
New York, New York 10022
(212) 766-9111
david@cfblaw.com

## Introduction

Stanislaw Pszeniczny is charged with one count of being a non-citizen in the United States after having been previously removed and deported in violation of Section 1326, title 8, of the United States Code ("U.S.C."). He moves to dismiss the indictment pursuant to 8 U.S.C. §1326(d), Federal Rule of Criminal Procedure 12(b)(2), and the Fifth and Sixth Amendments to the U.S. Constitution.

*First,* the Immigration Judge ("IJ") lacked jurisdiction to enter an order of removal against Mr. Pszeniczny. For an IJ to have jurisdiction over a removal proceeding, the proceeding must have been commenced through the filing of a suitable notice to appear. *See* 8 C.F.R. §1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence," only upon the filing of a notice to appear with the immigration court). Here, however, the "notice to appear" did not confer jurisdiction onto the IJ because it did not specify the date and time where the removal hearing would occur—it merely stated that the hearing would occur at a date and time "[t]o be set". *See NTA at Exhibit A.*

The Supreme Court has recently held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's

removal proceedings is not a 'notice to appear . . . .'" because the omission of date, time or place information "deprive[s] the notice to appear of its essential character." *Pereira v. Sessions*, 2018 WL 3058276, at *7, *8, *10 (2018). The putative notice to appear filed in Mr. Pszeniczny's case, therefore, did not give the IJ jurisdiction. This means that Mr. Pszeniczny's physical removal from the United States was unlawful, and the indictment must be dismissed.

## Factual Background

On June 4, 1996, Stanislaw Pszeniczny was admitted to the United States as a lawful permanent resident. On February 12, 1997, an indictment was filed in the United States District Court, Northern District of New York ("NDNY"), alleging that on January 16, 1997 he violated 8 U.S.C. §1324(a)(1)(A)(ii) because he assisted a non citizen to unlawfully enter the United States. *See Indictment at Exhibit B.*

Mr. Pszeniczny appeared before the Honorable Lawrence E. Kahn in the NDNY on March 21, 1997. He pleaded guilty to the one count listed in the February 12 indictment. *See plea transcript at Exhibit C.* He was sentenced to three years of supervised release on June 24, 1997. *See*

*sentencing transcript and judgment of conviction and sentence at Exhibit D.* After leaving court on the day of his sentence, legacy Immigration and Naturalization Services ("INS") agents detained Mr. Pszeniczny and served him with a Notice to Appear ("NTA"). *See Exhibit A, infra.* The NTA alleged two charges of removability: (i) alien smuggling under INA § 237(a)(1)(E)(i); and (ii) having had been convicted of an aggravated felony under INA §237(a)(2)(A)(iii). He was released on a $25,000 bond. *See INS Bond Determination at Exhibit E.* Significantly, the NTA did not list a time and place of the court hearing, and instead listed both as "To Be Set."

On April 22, 1998, Mr. Pszeniczny appeared for an immigration removal proceeding before IJ Sarah Burr at the New York City Immigration Court. Counsel for the defendant waived a Polish interpreter and pleadings were taken on the NTA and the matter was adjourned until May 6, 1998. *See hearing transcript at Exhibit F.* After hearing arguments on the charges of removability at the May 6 hearing, the IJ invited briefing on the issue and adjourned the case to July 22, 1998. *See hearing transcript at Exhibit G.* On July 22, 1998, the IJ sustained both charges of removability and ordered Mr. Pszeniczny deported to Poland. *See, hearing transcript at Exhibit H and order of removal at Exhibit I.* As was the case at the two previous hearings, counsel for the defendant waived the presence of a Polish interpreter.

4

A timely appeal was filed with the Board of Immigration Appeals ("BIA") who affirmed he IJ's decision on May 15, 2001. *See BIA decision at Exhibit J.* On November 2, 2004, Mr. Pszeniczny was detained and was subsequently deported to Poland. *See INS report at Exhibit K.* The indictment in this case was filed with this Court on August 14, 2018. The July 22, 1998 removal order is the only time Mr. Pszeniczny's has been deported.

## ARGUMENT

I. **Mr. Pszeniczny's removal order was invalid because the IJ had no jurisdiction to conduct removal proceedings—and his indictment, which is predicated on the IJ's order, must be dismissed.**

**A. Legal framework**

A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a due process right to challenge the removal order upon which the charge is predicated. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987); *United States v. Lopez*, 445 F.3d 90, 94 (2d Cir. 2006). As the Supreme Court has said, "where a determination made in an administrative proceeding is to play a critical role in the subsequent

5

imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *Mendoza-Lopez*, 481 U.S. at 837-838. *See also, United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998) ("In a criminal prosecution under [8 U.S.C.] § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." [overruled on other grounds)]).

Following *Mendoza-Lopez*, Congress codified the procedure for such a challenge, requiring that the defendant: 1) exhaust his administrative remedies (or establish that he he was excused from doing so); 2) show that the removal proceedings improperly deprived him of judicial review; and 3) demonstrate that the removal order was fundamentally unfair. *See* 8 U.S.C. § 1326(d). Demonstration of the third requirement- that a removal order was "fundamentally unfair"- requires a showing of "both a fundamental procedural error and prejudice resulting from that error." *United States v. Sosa*, 387 F.3d 131, 138 (2d Cir. 2006)(citing *United States v. Perez*, 330 F.3d 97, 104 (2d Cir. 2003) and quoting *United States v. Fernandez–Antonia,* 278 F.3d 150, 159 (2d Cir. 2002)). Significantly, Mr. Pszeniczny maintains that he need not satisfy the § 1326(d) framework because he was never "removed" as a matter of law—thus, the government cannot satisfy the plain language of § 1326, which applies only to

6

noncitizens who reenter the United States after having been "denied admission, excluded, deported, *or removed.*" 8 U.S.C. § 1326 (emphasis added). Notwithstanding this legal reality, he can also satisfy the three-prong § 1326(d) test, which is examined and analyzed in this motion.

### B. Mr. Pszeniczny's removal was fundamentally unfair

Because the first two prongs of § 1326(d)(1) and (2) relating to administrative exhaustion and judicial deprivation turn on the merits of his claim, Mr. Pszeniczny begins with the question of whether his removal was fundamentally unfair under § 1326(d)(3). The answer is yes.

#### i. *The removal order, entered without jurisdiction, violated Mr. Pszeniczny's due process rights*

The filing of a suitable NTA is a jurisdictional prerequisite to commencing an immigration case; and what constitutes an NTA has a specific statutory definition, which includes a document specifying "[t]he time and place at which the [removal] proceedings will be held." 8 U.S.C. §1229(1)(a)(G)(i). Recently, In *Pereira v. Sessions*, 2018 WL 3058276, the Supreme Court examined the importance of specifying the time and place on a charging document for it to meet the criteria of a "notice to appear"

mandated by §1229(1)(a)(G)(i). In *Pereira*, the noncitizen was undocumented but applied for a form of relief called "cancellation of removal" that would permit him to become a lawful permanent resident. *Id.* at *4. To be eligible for this relief, a noncitizen must show, among other things, that he or she has "'been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [an] application' for cancellation of removal." *Id.* (quoting 8 U.S.C. § 1229b(b)(1)(A)). But under a provision called the "stop-time rule," this ten years of continuous physical presence is deemed to end when the noncitizen is "served a notice to appear under section 1229(a)." *Id.* at *3 (citing 8 U.S.C. § 1229b(d)(1)(A)). The question, therefore, became, what constitutes a "notice to appear under section 1229(a)"?

To answer this question, the Supreme Court looked to the statute, which states:

> In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien . . . specifying the following . . .
>
> (i)    the time and place at which the proceedings will be held[.]

8 U.S.C. § 1229(a)(1)(G)(i). "Based on the plain text of the statute," the Supreme Court found that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings

8

is not a 'notice to appear under section 1229(a).'" *Id*. at *7, *8.

Although *Pereira* occurred in the context of the stop-time rule, its implications are far-reaching. Section 1229(a)(1)(G)(i) defines a "notice to appear"—not just for purposes of the stop-time rule—but for purposes of *all* removal proceedings. *See generally* 8 U.S.C. § 1229 ("Initiation of removal proceedings"); 8 U.S.C. § 1229(a)(1) ("Notice to appear"). Indeed, *Pereira* itself acknowledged that § 1229(a) "speak[s] in definitional terms" and uses "quintessential definitional language," further noting that "[n]owhere else within § 1229(a) does the statute purport to delineate the requirements of a 'notice to appear.'" *Id*. at *8, *10. The *Pereira* Court further observed, "when the term 'notice to appear' is used elsewhere in the statutory section, **including as the trigger for the stop-time rule,** it carries with it the substantive time-and-place criteria required by § 1229(a)." *Id*. at *10 (emphasis added). This clause is key, for it establishes that the stop-time rule is only **one** of the contexts in which a putative charging document that lacks the specified time-and-place information will not qualify as a "notice to appear."

Federal law and regulations clearly establish that "[j]urisdiction vests, and proceedings before an Immigration Judge commence," upon the filing of a notice to appear with the immigration court. 8 C.F.R. § 1003.14(a). *See*

9

*also Arenas-Yepes v. Gonzales,* 42 F.3d 111 (2nd Cir 2005) ("removal proceedings did not 'commence' against petitioner under the applicable regulations until September 4, 1998. . . .when the NTA served upon petitioner was simultaneously filed with the immigration court); *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 890 (9th Cir. 2018)("Once a notice to appear is filed with the Immigration Court . .. jurisdiction over the individual's immigration case vests with the IJ."); *Martinez-Garcia v. Ashcroft*, 366 F.3d 732, 734 (9th Cir. 2004) (stating that "removals are commenced by the filing of a Notice to Appear, pursuant to INA § 239(a)(1), 8 U.S.C. § 1229(a)"). Therefore, where immigration officials file a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings," *Pereira,* 2018 WL 3058276, at *7, jurisdiction does *not* vest, and removal proceedings do *not* commence under 8 C.F.R. § 1003.14(a). And, where jurisdiction has not vested, and removal proceedings have not commenced, the IJ has no authority to issue an order of removal, and any subsequent removal is illegal. That is precisely what happened in this case.

The "notice to appear" filed in Mr. Pszeniczny's removal proceedings contained no information regarding the date or time of his immigration hearing. Because the document lacked this critical information,

10

it did not meet the definition of a "notice to appear" under § 1229(a)(1)(G). In effect, there was no notice to appear filed in Mr. Pszeniczny's case. This means the IJ never acquired jurisdiction to commence removal proceedings under 8 C.F.R. § 1003.14(a). Thus, the IJ lacked jurisdiction to issue a removal order, and immigration authorities unlawfully took Mr. Pszeniczny to Poland in violation of his due process rights.

In *Pereira*, the Supreme Court rejected many of the points the Government is likely to raise in response to this argument. First, the Court found that this omission of time-and-place information was not "some trivial, ministerial defect, akin to an unsigned notice of appeal" because failing to include it "unquestionably would deprive the notice to appear of its essential character." *Id*. at *10 (internal quotations and alterations omitted). The *Pereira* court also rejected the Government's complaint that the "administrative realities" of removal proceedings would make it difficult to include this information, finding that "[t]hese practical considerations are meritless and do not justify departing from the statute's clear text." *Id*. at *12. In other words, *Pereira* meant what it said—when a charging document does not contain the date and time of the removal hearing, it is not a "notice to appear" that triggers the commencement of removal proceedings. Thus,

the IJ had no jurisdiction to issue a removal order, and Mr. Pszeniczny's "removal order" violated due process.

**ii. Mr. Pszeniczny was prejudiced by his unlawful removal.**

Here, prejudice is a simple matter – Mr. Pszeniczny "was removed when he should not have been and clearly suffered prejudice." *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006); *United States v. Copeland*, 376 F.3d 61, 73 (2d. Cir. 2004)(holding that "[p]rejudice is shown where 'defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred'")(quoting *United States v. Fernandez–Antonia*, 278 F.3d 150, 159 (2d Cir.2002)); *see also United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014)("If Aguilera 'was removed when he should not have been,' his 2005 removal was fundamentally unfair, and he may not be convicted of reentry after deportation.")(quoting *Camacho-Lopez*); *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017)(same); *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017)(holding that when the charging document in administrative removal proceedings "cannot support the asserted basis" the noncitizen's removal, he has suffered a prejudicial due process violation). Because Mr. Pszeniczny was removed when he should not have been, he

12

suffered a due process violation that caused him prejudice, and his removal was "fundamentally unfair" under § 1326(d).

C. **Mr. Pszeniczny is not required to exhaust his administrative remedies or seek judicial review.**

Under § 1326(d)(1) and (2), a defendant challenging an underlying removal order must also exhaust administrative remedies and show that the removal proceedings improperly deprived him of judicial review. But, prior to *Pereira,* both BIA and Second Circuit precedent squarely foreclosed the argument raised in this motion. Thus, any attempt to satisfy these requirements would have been futile.

In *Matter of Camarillo,* 25 I. & N. Dec. 644, 647 (BIA 2011), the BIA held that the reference to a "notice to appear" in the stop-time statute "merely specifies the document the DHS must serve on the alien" and "does not impose substantive requirements for a notice to appear to be effective in order for that trigger to occur." *Id*. at 647. Relying on "the language and design of the statute, the applicable regulations, and the congressional intent behind the provisions of [the statute]," the BIA concluded that "service of a notice to appear triggers the 'stop-time' rule, regardless of whether the date and time of the hearing have been included in the document." *Id*. at 651.

13

Most important, the BIA found the relevant statutory language "ambiguous," which permitted the agency to "adopt this approach as a matter within our adjudicative authority and administrative judgment" under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 866 (1984). *Id*.

The Second Circuit concurred. As a preliminary matter, the Second Circuit held that at *Chevron* step one the statute is ambiguous. *Guaman-Yuqui*, 786 F.3d 235, 238-239 (2d Cir. 2015)(decision abrogated by *Pereira*). Under step two of *Chevron,* the Second Circuit then held that the BIA's reasons for its holding in *Camarillo* were reasonable and entitled to *Chevron* deference. *Id.* at 240-241 The *Pereiera* Court, however, disagreed, finding that because "Congress has supplied a clear and unambiguous answer to the interpretive question at hand," the Court "need not resort to *Chevron* deference." 2018 WL 3058276, at *7. But before *Pereira* any challenge to the statute was futile, as it would have been rejected by the agency and then rejected by the Second Circuit out of deference to the agency.

"Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, . . . or where the administrative proceedings themselves are void." *United Farm Workers of Am., AFL-CIO v. Arizona Agr. Employment Relations Bd.*, 669 F.2d 1249,

14

1253 (9th Cir. 1982). Here, any attempts to exhaust administrative remedies and seek judicial review were futile because the agency squarely rejected the argument in *Camarillo*, and the Second Circuit deferred to the agency's decision. What's more, the absence of jurisdiction to conduct removal proceedings also rendered the proceedings void such that no exhaustion was necessary. *See id.*; *see also Winterberger v. Gen. Teamsters Auto Truck Drivers & Helpers Local Union 162*, 558 F.2d 923, 925 (9th Cir. 1977) (declining to require exhaustion because "[a]n administrative proceeding infected with fundamental procedural error, like a void judicial judgment, is a legal nullity"). Thus, Ms. Lopez need not satisfy § 1326(d)(1) and (2), and the Court should grant her motion to dismiss the indictment.

## Conclusion

Accordingly, for all the reasons set forth above, it is respectfully requested that the Court dismiss the indictment.

Dated: March 26, 2019

> Respectfully submitted,
>
> /S/ David J Cohen
>
> David Cohen
> Cohen Forman Barone
> 950 Third Ave., 11th Flr
> New York, New York 10022
> (212) 766-9111