SSS:ADG
F. # 2018R01188

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                   Docket No. 18-CR-433 (JBW)

STANISLAW PSZENICZNY,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN OPPOSITION TO STANISLAW PSZENICZNY'S MOTION TO DISMISS THE INDICTMENT

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Andrew D. Grubin
Assistant U.S. Attorney
    (Of Counsel)

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 3

BACKGROUND ............................................................................................................................ 4

I.   THE DEFENDANT'S CRIMINAL HISTORY AND REMOVAL ................................. 4

II.  THE DEFENDANT'S CURRENT MOTION .................................................................. 6

ARGUMENT .................................................................................................................................. 6

I.   THE DEFENDANT'S ATTACK ON THE INDICTMENT MUST BE
     ANALYZED WITHIN CONGRESS'S SECTION 1326(D) FRAMEWORK ................. 6

II.  THE PROCEEDING WAS NOT FUNDAMENTALLY UNFAIR .................................. 8

     A.  Legal Standard ................................................................................................ 8

     B.  The NTA Vested Authority in the Immigration Court and
         There Was No Fundamental Defect ............................................................ 9

     C.  Any Fundamental Procedural Error Did Not Prejudice the Defendant ................. 13

III. THE DEFENDANT WAS NOT DEPRIVED OF THE
     OPPORTUNITY FOR JUDICIAL REVIEW ................................................................ 14

CONCLUSION ............................................................................................................................. 15

PRELIMINARY STATEMENT

The defendant is charged by indictment with illegal reentry in violation of Title 8, United States Code, Sections 1326(a) and (b)(2). He was ordered removed in 1998, and physically removed from the United States in 2005, following a 1997 conviction for unlawfully bringing into the country non-United States citizens. In 2018, Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") authorities found the defendant in the United States, leading to the instant charge.

On March 26, 2019, the defendant moved to dismiss the indictment by arguing that the 1998 administrative order of removal (the "Removal Order"), which underlies the instant charge, was invalid because the immigration court that issued the Removal Order lacked jurisdiction to do so. See Defendant's Memorandum of Law in Support of Motion to Dismiss the Indictment ("Def.'s Mem."). The defendant also incorrectly argues that his jurisdictional attack on the indictment is not governed by Title 8, United States Code, Section 1326(d) (Def.'s Mem. at 6–7); however, the statute governs all collateral challenges to an indictment charging illegal reentry.

Section 1326(d) precludes a collateral attack on a removal order in a criminal proceeding unless the defendant: (1) exhausted his administrative remedies, (2) was denied an opportunity for judicial review and (3) can demonstrate that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d) (emphasis added). For the reasons set forth below, the defendant has not satisfied Section 1326(d)'s second or third prongs.[1] Taking the prongs

---

[1] The defendant challenged the Removal Order in immigration court and appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"). The government therefore does not contend that the defendant failed to exhaust his administrative remedies.

3

in reverse order, first, the defendant has failed to show that his due process rights were violated or that he suffered any prejudice from any alleged due process error. More specifically, the defendant's reliance on Pereira v. Sessions, 138 S. Ct. 2105 (2018) is misplaced regardless of whether viewed in a jurisdictional context or within the Section 1326(d) framework. Second, the defendant was not denied an opportunity for judicial review; he simply decided not to take advantage of it. For these reasons, the Court should reject the defendant's motion.

## BACKGROUND

### I. THE DEFENDANT'S CRIMINAL HISTORY AND REMOVAL

The defendant is a citizen and native of Poland. (Notice to Appear ("NTA"), Def. Ex. A at SP_000174.) On June 4, 1996, the defendant was lawfully admitted to the United States. (Id.) One year later, on June 24, 1997, the defendant was convicted for unlawfully bringing into the country non-United States citizens, in violation of Title 8 United States Code, Section 1324(a)(1)(A). (Id.) The defendant was sentenced to time served and three years of supervised release. (Sentencing Tr., 97-CR-38 (LEK) (N.D.N.Y. 1997), Def. Ex. D at SP_000338.)

On June 24, 1997, DHS charged the defendant in an NTA with being subject to removal pursuant to Sections 237(a)(2)(A)(iii) and 237(a)(1)(E)(i) of the Immigration and Nationality Act ("INA").[2] (Def. Ex. A at SP_000172.) The NTA listed five factual

---

[2] Section 237(a)(2)(A)(iii) provides, in relevant part, that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Section 237(a)(1)(E)(i) provides, in relevant part, that "[a]ny alien who (prior to the date of entry, at the time of any entry, or within 5 years of the date of any entry) knowingly has encouraged,

4

allegations.[3] (Id. at SP_000174.) Among other rights, the NTA advised the defendant that he had the right to be represented by counsel, the right to a hearing at which he could present evidence and the right to appeal an adverse decision by the immigration judge ("IJ") (Id. at SP_000173.) The NTA's certificate of service provided that the NTA was served on the defendant in person and that the defendant was told in Polish of the time and place of his hearing and the consequences of his failure to appear. (Id.) On February 24, 1998, an IJ granted the defendant's request to have his removal proceedings in New York, New York, instead of Buffalo, New York. (Order re. Venue, SP_000533 – 534 ("Gov. Ex. A."))

       The defendant and his counsel appeared for his immigration removal proceeding on April 22, 1998, in New York, New York. (Removal Tr., SP_000568 – 573, Def. Ex. F.) The hearing was adjourned until May 6, 1998. (Id. at SP_000572 – 573.) On May 6, 1998, the defendant and his counsel appeared again in immigration court and, after argument on the charges of removability, the IJ invited briefing on the issue and adjourned the case to July 22, 1998. (Removal Tr., Def. Ex. G at SP_000581.) On July 22, 1998, the defendant and counsel appeared before the IJ for a final time. (Removal Tr., SP_000582 – 586, Def. Ex. H.) The IJ sustained the charges of removability and ordered the defendant removed to Poland. (Id. at SP_000583 – 584; Order of Removal, SP_000622, Def. Ex. I.)

---

induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is deportable."

    [3]    The factual allegations were, in relevant part, that: (1) the defendant was not a citizen or national of the United States; (2) the defendant was a native and citizen of Poland; (3) the defendant was admitted to New York as an immigrant on or about June 4, 1996; (4) on or about June 24, 1997, the defendant knowingly encouraged or assisted two non-citizens to unlawfully enter the United States; and (5) the defendant had been convicted of smuggling non-citizens into the United States in violation of federal law. (Id. at SP_000174.)

5

The defendant filed an appeal with the BIA, which affirmed the IJ's decision on May 15, 2001. (BIA Order, SP_000550, Def. Ex. J.) The defendant was subsequently removed to Poland on January 14, 2005.

Sometime prior to June 13, 2018, the defendant illegally reentered the United States. Upon verification of the defendant's identity, criminal history and prior removal, on August 14, 2018, the defendant was charged in the instant one-count indictment with illegal reentry after removal following the conviction of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).

## II. THE DEFENDANT'S CURRENT MOTION

On March 26, 2019, the defendant filed the present motion arguing that the 1998 Removal Order was invalid because the IJ had no jurisdiction to conduct removal proceedings and, therefore, the indictment must be dismissed. As an initial matter, the defendant argues that the jurisdictional question falls outside the familiar Section 1326(d) framework. In other words, the defendant claims that he need not show that he exhausted administrative remedies, was deprived of judicial review or even that the Removal Order was fundamentally unfair. As shown below, the defendant is incorrect about both arguments, and his motion should be denied.

## ARGUMENT

### I. THE DEFENDANT'S ATTACK ON THE INDICTMENT MUST BE ANALYZED WITHIN CONGRESS'S SECTION 1326(D) FRAMEWORK

The defendant alleges that the Court should review his Pereira attack on the indictment—that the NTA failed to confer jurisdiction in the immigration court—outside of the congressionally established Section 1326(d) framework. (Def.'s Mem. at 6–7).

6

However, all collateral attacks on an indictment charging 8 U.S.C. § 1326 are governed by Section 1326(d). A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 may collaterally attack the validity of the removal or deportation order that underlies the criminal charge only in limited, enumerated circumstances as mandated by Congress. See 8 U.S.C. § 1326(d); United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002). The dismissal of an indictment is an "extraordinary remedy reserved only for limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks omitted).

A defendant is precluded from seeking to dismiss an indictment on the basis of a collateral attack unless he can demonstrate that: (1) he has "exhausted any administrative remedies that may have been available to seek relief against the order;" (2) "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review;" and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). These requirements are exclusive and "conjunctive," and, as such, a defendant must establish all three, and nothing else, to successfully challenge a deportation order. See Fernandez-Antonia, 278 F.3d at 157.

Therefore, the defendant's Pereira argument must be considered a "fundamental procedural error" claim under Section 1326(d)'s third prong and thereby subject to the statute's restraints. A District Court in the Eastern District of New York has already reached this conclusion. United States v. Maldonado, 18-CR-308 (CBA), Mem. and Order at 50, (E.D.N.Y., 2019)[4] (holding that [Section 1326(d)] "is the exclusive channel

---

[4] The Memorandum and Order is attached and hereinafter referenced as Government Exhibit B.

7

through which a defendant can challenge an underlying removal order" and that "Section 1236(d) could not be clearer—in order to challenge a deportation order, a defendant must satisfy [its] prerequisites") (citing Larois-Ajualat, No. 18-10076-JWB, 2018 WL 5013522 (D. Kan. Oct. 15, 2018)).

Like the defendant, the government uses Congress's mandated three-prong test to analyze the defendant's claims. However, as demonstrated below, assuming arguendo that the defendant's jurisdictional argument is something wholly separate from Section 1326(d), it would fail all the same.

## II. THE PROCEEDING WAS NOT FUNDAMENTALLY UNFAIR

### A. Legal Standard

The defendant argues that his underlying removal proceedings were fundamentally unfair because the NTA did not vest the immigration court with the necessary authority. (Def.'s Mem. at 7–12). Contrary to the defendant's claims, his Removal Order was not fundamentally unfair. Section 1326(d)(3) bars a collateral attack on a deportation order unless a defendant can show that the "entry of the deportation order was fundamentally unfair." 8 U.S.C. § 1326(d). To prove "fundamental unfairness," a defendant "must show both a fundamental procedural error and prejudice resulting from that error." United States v. Copeland, 376 F.3d 61, 70 (2d Cir. 2004) (quoting United States v. Perez, 330 F.3d 97, 104 (2d Cir. 2003)). The defendant "bears the burden of showing that entry of the removal order was fundamentally unfair." See United States v. Daley, 702 F.3d 96, 100 (2d Cir. 2012).

B. The NTA Vested Authority in the Immigration Court and There Was No Fundamental Defect

The defendant argues that the Removal Order was fundamentally unfair because the NTA indicated "a date to be set" and a "time to be set" for a removal hearing, rather than a specific date and time. (Def.'s Mem. at 7). The defendant's argument rests on a broad expansion of Pereira, 138 S. Ct. 2105. As the BIA recently explained in discussing Pereira, the Supreme Court was addressing the "narrow question" of whether an NTA lacking a specific date and time could trigger a bar to discretionary relief, not whether such a defect would render a removal order void. The BIA concluded that the answer to that latter question is no. See In re German Bermudez-Cota, 27 I. & N. Dec. 441, 447 (BIA 2018).

The INA provides that "[i]n removal proceedings under section 1229a . . . written notice (in this section referred to as a "notice to appear") shall be given in person to the alien . . . specifying" certain information, including, inter alia, "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1). By its terms, however, this Section refers only to a notice provided to the defendant, 8 U.S.C. § 1229(a)(1); nothing in Section 1229 directs that such notice must be filed with the immigration court to vest jurisdiction with the agency, and no other subsection of the statute provides any mechanism or framework for vesting jurisdiction with the immigration court.

The issue of when and how jurisdiction vests with the immigration court is addressed not by statute, but by regulation. Congress, through the INA, expressly conferred upon the United States Attorney General the authority and responsibility to conduct removal proceedings, 8 U.S.C. § 1229a, as well as the authority to "establish such regulations . . . as [the Attorney General] determines to be necessary for carrying out" these responsibilities

9

under the INA, 8 U.S.C. § 1103(g)(2). Pursuant to that statutory delegation of authority, the Attorney General established a comprehensive framework governing immigration court proceedings, see generally 8 C.F.R. Ch. V, Subch. A, Pt. 1003, Subpt. C, including when and how jurisdiction vests with the immigration court.

"Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court [by DHS]." 8 C.F.R. § 1003.14(a). The charging document is defined, by regulation, to "include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13. The regulation does not reference the statutory definition of "Notice to Appear," found in 8 U.S.C. § 1229(a)(1). Rather, the regulation dictates the necessary contents of an NTA for purposes of vesting jurisdiction with the immigration court. The NTA must include in relevant part:

> (1) The nature of the proceedings against the alien;
> (2) The legal authority under which the proceedings are conducted;
> (3) The acts or conduct alleged to be in violation of law;
> (4) The charges against the alien and the statutory provisions alleged to have been violated;
> (5) Notice that the alien may be represented, at no cost to the government by counsel or other representative authorized to appear pursuant to 8 C.F.R. § 1292.1;
> (6) The address of the Immigration Court where [DHS] will file the Order to Show Cause and Notice to Appear; and
> (7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26.

8 C.F.R. § 1003.15(b). The NTA served on the defendant, and filed with the immigration court, contained all of the information required by 8 C.F.R. § 1003.15(b).

10

The defendant makes no serious argument that the NTA filed in his case failed to comply with 8 C.F.R. § 1003.15, and as the record establishes, no such argument could be made. He argues, rather, that the Supreme Court's recent decision in Pereira entails the result that any NTA that lacks all of the information required under 8 U.S.C. § 1229(a)(1) is defective for all purposes. (Def.'s Mem. at 7–12). In Pereira, the Supreme Court examined the interplay between a statutory provision relating to the occurrence of a specific event (the stop-time rule's cutting off the accrual of continuous physical presence for the purpose of determining whether one is eligible for cancellation of removal), and the triggering mechanism for that event (service of a statutorily compliant NTA). 138 S. Ct. at 2109–10. The statutory definition of "Notice to Appear" supplied the clear answer to when the stop-time rule could apply: only upon the service of notice that included the time and place as Section 1229(a) requires. See id. at 2114.

The regulatory provisions at issue here are structured similarly and likewise provide a plain answer to the question presented. The event this case is concerned with is the vesting of jurisdiction with the immigration court under 8 C.F.R. § 1003.14, and the triggering mechanism for that event is service of a charging document that complies with the definitional requirements of the regulation. Under the logic of Pereira, Sections 1003.15(b) and (c) supply the plain answer to when jurisdiction vests with the immigration court: when the NTA is filed, as long as that document contains the information required by the regulation.

Therefore, the Court's resolution of the narrow issue it was addressing in Pereira has no relevance to the defendant's own case, as there is no question relating to proper application of the stop-time rule or whether a statutorily deficient NTA stopped the

11

defendant's accrual of continuous physical presence. And the Court's consistent reference to the "narrowness" of the issue it was resolving, Perira, 138 S. Ct. at 2110, 2113, belies any intent to render the broad holding that the defendant argues the Court actually entered.

Additionally, the holding that the defendant constructs for the Pereira decision—that all NTAs lacking a time and place for the initial hearing are essentially void and incapable of vesting jurisdiction in the immigration court—is not consistent with the Pereira Court's judgment. After holding that the stop-time rule should not have been applied to void the application for cancellation of removal, the Supreme Court directed that the case be "remanded for further proceedings consistent with this opinion," namely, further consideration of the alien's eligibility for cancellation of removal. See id. at 2120. But if the necessary result of the statutorily deficient NTA in Pereira is that proceedings could have never been properly instituted in the first place, one could have expected the judgment to reflect the impermissibility of any further proceedings in the defendant's case in the absence of a newly filed, and statutorily compliant, NTA. The contemplation of further proceedings on the defendant's eligibility for cancellation of removal in Pereira, therefore, undercuts the contention that the deficiency is fatal to the immigration court's jurisdiction.

Since Pereira was decided in June 2018, defendants across the country who were charged with illegal reentry have made the same argument as the defendant here. While the Second Circuit has not weighed in on the question, federal courts across the country, including in New York, have almost uniformly rejected these so-called Pereira arguments. See, e.g., Gov. Ex. B at 26 ("For a number of reasons, the Court finds that [the defendant's] challenge is meritless."); Santos-Santos v. Barr, 917 F.3d 486, 490–91 (6th Cir. 2019) ("No references to the time and place of the hearing are required to vest jurisdiction

under the regulation."); Karingithi v. Whitaker, 913 F.3d 1158, 1159 (9th Cir. 2019) ("Because the charging document in this case satisfied the regulatory requirements, we conclude the [IJ] had jurisdiction over the removal proceedings."); Sigal v. Searls, 18-CV-00389-EAW, 2018 WL 5831326 (W.D.N.Y. Nov. 7, 2018) ("Petitioner urges this Court to read Pereira for the broad proposition that a notice to appear . . . that states that the time and place of the removal proceedings are to be determined fails to vest jurisdiction with the immigration court. . . . Nothing in Pereira supports such a conclusion.").

### C. Any Fundamental Procedural Error Did Not Prejudice the Defendant

Even if the NTA's lack of a specific hearing date and time violated the INA (and also rose to the level of a due process violation), the defendant cannot show that the violation prejudiced him under Section 1326(d). Here, any defect in the initial NTA was cured by the defendant's later notice of a hearing date on April 22, 1998. There is no question that the defendant was aware of the hearing; he appeared for it with counsel, as well as appeared at two subsequent hearings. In fact, in February 1998, the defendant requested to have his removal proceeding transferred to New York City. (Gov. Ex. A.) As the Ninth Circuit recently held, an NTA "that does not include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact later sent to the alien." Popa v. Holder, 571 F.3d 890, 896 (9th Cir. 2009).

Here, the defendant does not claim that he did not know the date or time of his hearing. Rather he attended three separate proceedings, with counsel present, and litigated multiple arguments before both the IJ and the BIA. Therefore, even assuming a due process violation existed, the defendant has failed to show any prejudice.

### III. THE DEFENDANT WAS NOT DEPRIVED OF THE OPPORTUNITY FOR JUDICIAL REVIEW

Even if there were a fundamental defect raising due process claims and the defendant suffered prejudice as a result, the defendant failed to seek judicial review of his removal. To prevail on a motion to dismiss under Section 1326(d), the defendant must demonstrate that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). The Second Circuit has held that "judicial review" includes both direct appeal to a federal court and judicial relief by way of habeas corpus. See United States v. Copeland, 376 F.3d 61, 67–68 (2d Cir. 2004); United States v. Gonzalez-Roque, 301 F.3d 39, 49–50 (2d Cir. 2002).

A defendant's failure to seek judicial relief, however, may be excused where the defendant did not have a "realistic opportunity" to file the petition or where such relief was not "realistically possible." United States v. Gill, 748 F.3d 491, 504–05 (2d Cir. 2014). Cases where collateral attack was permitted on those grounds usually related to the short interval between the deportation order and the physical deportation. See, e.g., Mendoza-Lopez, 481 U.S. 828, 830 (1987) (one day between order and deportation); United States v. Sosa, 387 F.3d 131, 138 (2d Cir. 2004) (less than one month between order and deportation).

None of these considerations are applicable here. First, had the defendant truly believed that the IJ or BIA made a legal error, he either could have directly appealed the adverse decision to the Second Circuit or filed a habeas petition in the district court. However, he did not do so. Second, the defendant had considerable time to seek judicial review. Here, the BIA affirmed the IJ's decision on May 15, 2001, and the defendant was not removed from the United States until 2005.

Nevertheless, the defendant argues that there was no need for him to comply with Congress's strictures in Section 1326(d)(2) because (1) the absence of jurisdiction to conduct removal proceedings rendered the proceedings void and (2) it would have been futile under BIA precedent. As explained above, in Section II, the removal proceedings were not a legal nullity. As for the defendant's second, futility argument, while the Second Circuit likely would have rejected the defendant's arguments about the NTA for the simple reason that they are incorrect, nothing stopped the defendant from attempting to make such an argument.

Because the defendant was not deprived of an opportunity for judicial review, his motion should be dismissed.

## CONCLUSION

The defendant has the burden of proof to establish that he meets all three of the criteria under 8 U.S.C. § 1326(d) to be able to collaterally attack his deportation order.

He has failed to meet that burden.  Therefore, his collateral attack must fail, and the Court should reject the motion to dismiss.

Dated:   Brooklyn, New York
         April 8, 2019

                                        RICHARD P. DONOGHUE
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

                              By:   /s/ Andrew D. Grubin
                                        Andrew D. Grubin
                                        Assistant United States Attorney
                                        (718) 254-6322

Cc:  David Cohen, Esq. (By ECF and Email)