UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MEMORANDUM AND ORDER** |
| – against – | 18-CR-00433 |
| STANISLAW PSZENICZNY, | |
| Defendant. | |

**Parties**

**Appearances**

For United States

Andrew Grubin
United States Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201

For Defendant

David Jason Cohen
Cohen & Forman, LLP
950 Third Avenue, 10th Floor
New York, NY 10022

JACK B. WEINSTEIN, Senior United States District Judge:

**Table of Contents**

I.    Introduction ........................................................................................................ 2
II.   Chronology ........................................................................................................ 3
III.  Motion to Dismiss ............................................................................................ 4
IV.  Relevant Statutes and Regulations .................................................................. 5
V.   *Pereira v. Sessions* ........................................................................................ 6
   A.  Support against Applying *Pereira* in Instant Case ................................. 8
   B.  Support for Applying *Pereira* in Instant Case .................................... 11
VI.  Applicability of 8 U.S.C. § 1326(d) Framework ............................................ 14
VII. Discussion of § 1326(d)'s Requirements ........................................................ 15
   A.  Exhaustion of Administrative Remedies and Deprivation of an Opportunity for Judicial Review .......................................................................................................... 15
   B.  Entry of Order of Removal Was Fundamentally Unfair ........................ 16
VIII. Waiver of Subject Matter Jurisdiction ......................................................... 17
   A.  Waiver Generally ................................................................................... 17
   B.  Personal or Subject Matter Jurisdiction ............................................... 18
IX.  Conclusion ...................................................................................................... 21

## I.      Introduction

Defendant Stanislaw Pszeniczny moves to dismiss his indictment. It reads as follows:

> On or about June 13, 2018, with the Eastern District of New York, the defendant Stanislaw Pszeniczny, also known as "Stanislaw Pszenczny," an alien who had previously been removed and deported from the United States after a conviction for the commission of an aggravated felony, was found in the United States, without the Secretary of the United States Department of Homeland Security and the United States Attorney General having expressly consented to such alien's applying for admission." (Title 8, United States Code, Section 1326(a) and 1326(b)(2); Title 18, United States Code, Section 3551 <u>et</u> <u>seq</u>.)

He claims he never received a proper Notice to Appear ("NTA") since the notice he did

receive did not specify a date and time for the hearing, thus nullifying the original removal order,

and exempting him from an underlying void removal.

In fact, he received a full notice of his hearings, he and his trial counsel participated in full hearings of which he had notice, he was afforded full due process, he was properly ordered removed, he was properly removed, he returned illegally after deportation, and he was properly indicted—an indictment he is now challenging.

While the precedents are not completely compatible, they support rejection of his motion to dismiss in this particular case.

## II.     Chronology

A chronology of the relevant events is set out below.

June 4, 1996:  Defendant is admitted to the United States as a lawful permanent resident. Def. Mem. at 3, ECF No. 20, Mar. 26, 2019.

June 24, 1997:  Defendant pled guilty to unlawfully bringing non-U.S. citizens into the country.  *Id.* at Ex. C.  Sentenced to time-served and three years of supervised release. *Id.* at Ex. D.

June 24, 1997:  An NTA charges the defendant with being subject to removal.

     i.  The NTA does not include the date and time of his initial removal hearing, instead listing both as "to be set."

    ii.  The NTA is served on the defendant in person.

   iii.  When the NTA is served on defendant, he is given oral notice in Polish (his native language) of the time and place of his hearing and the consequences of his failure to appear.

*Id.* at Ex. A.

August 15, 1997:  A notice of hearing schedules the date and time of his initial removal hearing for February 24, 1998 at 9:00 a.m.  The notice of hearing is served on defendant. Gov't Ltr. Ex. B, ECF No. 29, June 7, 2019.

February 24, 1998:  An immigration judge grants defendant's request to have his removal proceedings transferred from Buffalo to New York City.  Gov't. Mem. Ex. A, ECF No. 21, Apr. 9, 2019.

<u>April 22, 1998</u>: Defendant and his counsel appear for a removal proceeding. Hearing is adjourned. Defendant's counsel concedes that defendant was served with a charging document dated June 24, 1997. *See* Def. Mem. Ex. F.

<u>May 6, 1998</u>: Defendant and his counsel appear for a removal proceeding. The immigration judge requests briefing and the case is adjourned. *Id.* at Ex. G.

<u>July 22, 1998</u>: Defendant and his counsel appear for a removal proceeding. Immigration court orders him removed to Poland. *Id.* at Ex. H. A removal order is entered. *Id.* at Ex. I.

<u>May 15, 2001</u>: Defendant's appeal to the Bureau of Immigration Appeals ("BIA") is denied. BIA affirms immigration judge's decision. *Id.* at Ex. J.

<u>January 14, 2005</u>: Defendant is removed to Poland. Gov't. Mem. at 6.

<u>August 14, 2018</u>: Defendant is charged with illegal reentry under 8 U.S.C. § 1326. *Id.*

## III.       **Motion to Dismiss**

Defendant moves to dismiss his indictment on the ground that his underlying removal order was invalid because his NTA did not specify the date and time that the initial removal hearing would occur. He argues, relying on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), that this defect "deprive[s] the notice to appear of its essential character" and thus the NTA failed to vest jurisdiction in the immigration court. Def. Mem. at 3 (quoting *Pereira*, 138 S. Ct. at 2116–17).

A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a right to challenge the removal order upon which the charge is predicated. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987).

Pursuant to 8 U.S.C. § 1326(d), a defendant must satisfy the following three elements to prevail on a collateral attack of a removal order in a criminal proceeding:

(i)        exhaustion of his administrative remedies, § 1326(d)(1);

(ii)       denial of an opportunity for judicial review, § 1326(d)(2); and

(iii)      demonstration that the entry of the order of removal was fundamentally unfair, § 1326(d)(3).

Defendant makes the following two arguments: (1) he need not satisfy the § 1326(d) framework because his removal order was void and a legal nullity; and (2) even if his attack on the indictment must be analyzed within the § 1326(d) framework, he can satisfy each of the three elements of § 1326(d).

## IV.     Relevant Statutes and Regulations

Section 1229a of Title 8 directs immigration judges to "conduct proceedings for deciding the inadmissibility or deportability of an alien."  8 U.S.C. § 1229a(a)(1).

Section 1229 of Title 8 provides that "[i]n removal proceedings under section 1229a of [Title 8], written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien . . . specifying" certain information, including, *inter alia*, "[t]he time and place at which the proceedings will be held."  8 U.S.C. § 1229(a)(1).  "The statutory text does not . . . explain when or how jurisdiction vests with the immigration judge—or, more specifically, denote which of the several requirements for NTAs listed in § 1229(a)(1) are jurisdictional."  *Banegas Gomez v. Barr*, 922 F.3d 101, 110 (2d Cir. 2019) (quoting *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 313 (6th Cir. 2018)).

Several regulations related to the jurisdiction of the immigration court have been promulgated.  8 C.F.R. § 1003.14 provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."  8 C.F.R. § 1003.13 defines a "charging document" as "the written instrument which initiates a proceeding before an Immigration Judge . . . includ[ing], a Notice to Appear."

8 C.F.R. § 1003.15(b), which lists information that an NTA must include, does not require that the NTA contain the date and time of the removal hearing.  8 C.F.R. § 1003.18(b) requires

that the immigration court provide notice of the initial removal hearing with an NTA that
contains the date and time of the hearing only "*where practicable*."  It reads:

> In removal proceedings pursuant to section 240 of the Act, the Service *shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable*.  If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing.

8 C.F.R. § 1003.18(b) (emphasis added).

## V.     *Pereira v. Sessions*

The Supreme Court in *Pereira v. Sessions* held that a "putative notice to appear that fails
to designate the specific time or place of a noncitizen's removal proceedings is not a 'notice to
appear under section 1229(a),' and so does not trigger the stop-time rule."  138 S. Ct. at 2107.

The Court explained, by expressly referencing 8 U.S.C. § 1229(a), that the stop-time rule

> specifies where to look to find out what "notice to appear" means. Section 1229(a), in turn, clarifies that the type of notice "referred to as a 'notice to appear'" throughout the statutory section is a "written notice . . . specifying," as relevant here, "[t]he time and place at which the [removal] proceedings will be held." § 1229(a)(1)(G)(i).  Thus, based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, "specif[ies]" the "time and place" of the removal proceedings.

*Id.* at 2108; *see also Banegas Gomez*, 922 F.3d at 111 ("The *Pereira* Court concluded
that § 1229b(d)(1)'s reference *to 'under'* [Section 1229(a)] was 'the glue that bonds the
stop-time rule to § 1229(a)'s substantive time-and-place requirements.' But contrary to
[petitioner's] claim, no such statutory glue bonds the Immigration Court's jurisdiction to
§ 1229(a)'s requirements." (quoting *Pereira*, 138 S. Ct. at 2117) (emphasis added)).

*United States v. Larios-Ajualat* provides a useful summary of *Pereira* and the 10 year
"stop time rule":

The background of *Pereira* is as follows.  Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), aliens who are subject to removal proceedings may be eligible for cancellation of removal if, among other things, they have been physically present in the United States for a continuous period of ten years or more.  8 U.S.C. § 1229b(b)(1)(A).  But under this so-called "stop-time rule," the period of continuous presence is deemed to end when the alien "is served a notice to appear under section 1229(a).  *Id.* § 1229b(d)(1).

Section 1229(a) provides that the government will serve the alien a written "notice to appear" specifying, among other things, the time and place at which removal proceedings will be held.  *Id.* § 1229(a)(1)(G)(i).  In recent years, the Department of Homeland Security has issued notices that do not specify a time or date, but state that the initial removal proceeding will take place on a date and time "to be set."  Pereira, a citizen of Brazil who overstayed his visa, was served such a notice.  *Pereira*, 138 S. Ct. at 2112.  About a year later, the immigration court mailed Pereira a more specific notice setting the date and time of the initial hearing, but the notice was sent to the wrong address.  As a result, Pereira failed to appear and the immigration court ordered him removed in absentia.  Several years later, Pereira was arrested and the immigration court reopened the removal proceeding.  When Pereira applied for cancellation of removal and argued he had been continuously present in the United States for more than ten years, the immigration court denied his application on the grounds that the notice to appear had interrupted the ten-year period under the stop-time rule.  *Id.*

The Supreme Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under § 1229(a)' and therefore does not trigger the stop-time rule."  *Pereira*, 138 S. Ct. at 2110.  The Court relied on the definitional nature of § 1229(a), which makes clear the notice to appear contemplated in that provision is one that contains specific information, including the date and time of the removal proceeding.   The Court observed that § 1229(a)(2), which addresses changes in the time and place of removal proceedings, allows the government to give notice specifying a new time or place of the proceedings, which presupposes that the government has already specified an initial time and place.  The Court further pointed out that § 1229(b)(1): "gives a noncitizen 'the opportunity to secure counsel before the first [removal] hearing date' by mandating that such 'hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear.'  For § 1229(b)(1) to have any meaning, the 'to appear' must specify the time and place that the noncitizen, and his counsel, must appear at the removal hearing."  *Id.* at 2114-15.  Otherwise, the government could give an initial notice of a hearing "to be set" and then, one day before the hearing, specify

the date and time, and thereby deprive the noncitizen of a meaningful opportunity to obtain and have prepared counsel. *Id.* at 2115.

No. 18-10076-JWB, 2018 WL 5013522, at *2–3 (D. Kan. Oct. 15, 2018).

"Federal district courts disagree on the reach of the Supreme Court's holding in *Pereira*." *United States v. Erazo-Diaz*, 353 F. Supp. 3d 867, 871 (D. Ariz. 2018). "Some district courts have found that *Pereira* extends no further than the stop-time rule," and therefore cannot serve as a basis to void an immigration court's jurisdiction. *Id.* (citing *United States v. Chavez*, No. 2:17-CR-40106-01-HLT, 2018 WL 6079513 (D. Kan. Nov. 21, 2018)). "Other district courts have found that *Pereira* clarifies what a notice must contain to be a 'notice to appear' under § 1229(a), and that because a putative notice that omits the time and place of the removal proceedings is not a 'notice to appear,' the filing of a such a notice does not confer jurisdiction on an immigration court." *Id.* (citing *United States v. Cruz-Jimenez*, No. A-17-CR-00063-SS, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018)).

## A. Support against Applying *Pereira* in Instant Case

Several recent cases, including a recent decision from the Court of Appeals for the Second Circuit, support the view that *Pereira* is inapplicable here. *See, e.g.*, *Banegas Gomez v. Barr*, 922 F.3d 101 (2d Cir. 2019); *Santos-Santos v. Barr*, 917 F.3d 486 (6th Cir. 2019); *Ortiz-Santiago v. Barr*, No. 18-3251, 2019 WL 2171368 (7th Cir. May 20, 2019); *Ali v. Barr*, No. 18-1526, 2019 WL 2147246 (8th Cir. May 17, 2019); *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019); *In Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018).

In *Banegas Gomez v. Barr*, the Second Circuit Court of Appeals rejected defendant's argument under *Pereira* that jurisdiction does not vest in the immigration court unless an NTA includes the time or date of the hearing. 922 F.3d at 112. The court held that "*Pereira*'s self-described disposition of [the] 'narrow question'" of what information an NTA must contain to

trigger the stop-time rule "is not properly read to void *jurisdiction* in cases in which an NTA omits a hearing time or place." *Id.* at 110 (emphasis in original). It reasoned that such a broad application of *Pereira* would "render meaningless [the regulations'] command that such information need only be included 'where practicable.'" *Id.* at 111 (quoting *Karingithi*, 913 F.3d at 1160).

The court concluded that an NTA that omits the date and time of the initial removal proceeding is "nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien." *Id.* at 112; *but cf. Lopez v. Barr*, No. 15-72406, 2019 WL 2202952, at *8 (9th Cir. May 22, 2019) (holding that, in the context of the stop-time rule, an NTA "that is defective under *Pereira* cannot be cured by a subsequent Notice of Hearing").

The Court of Appeals for the Second Circuit relied on a precedential opinion from the BIA in support of its conclusion. *See id.* at 111. In *In Matter of Bermudez-Cota*, the BIA held that a "two-step notice process," first sending the noncitizen an incomplete NTA and then filling in the date and time of the initial removal hearing in a subsequent notice of hearing, "is sufficient to meet the statutory notice requirements in [Section 1229(a) of Title 8]" and to grant an immigration judge jurisdiction over the removal proceedings. 27 I. & N. Dec. 441 at 447; *see also Ortiz-Santiago*, 2019 WL 2171368, at *4 (describing the BIA's "two-step approach" in *In Matter of Bermudez-Cota*).

The BIA distinguished *Pereira* on several grounds, including:

(i)     The defendant was "sufficiently informed to attend his hearings." Unlike in
        *Pereira*, the defendant was properly served with an NTA and a subsequent notice

of hearing (the latter specifying the time and place of the hearing) and the defendant attended his initial removal hearing and subsequent hearings.

(ii)     *Pereira* was never intended to extend so broadly.  "The Court specifically stated multiple times that the issue before it was 'narrow' and that the 'dispositive question' was whether a notice to appear that does not specify the time and place at which proceedings will be held, as required by [Section 1229(a)(1)(G)(i)], triggers the 'stop-time' rule for purposes of cancellation of removal."

(iii)    The Supreme Court "did not purport [that the defective NTA] invalidate[d] the alien's underlying removal proceedings or suggest that proceedings should be terminated[; instead it] remanded the matter for further proceedings."

(iv)     The BIA is "compelled to follow" the regulations governing an immigration court's jurisdiction, which do not "mandate that the [charging] document specify the time and date of the initial hearing before jurisdiction will vest."

*In Matter of Bermudez-Cota*, 27 I. & N. Dec. at 442–44.

The Sixth, Seventh, Eighth, and Ninth Circuits have refused to read *Pereira* to stand for the proposition that an NTA that does not set a date and time for removal proceedings fails to vest jurisdiction in the immigration court.  *See Santos-Santos*, 917 F.3d at 489 (distinguishing *Pereira* because "that case (1) dealt with whether the narrow 'stop-time' rule can be triggered by an NTA omitting the time and place of the initial hearing, and (2) addressed two statutory provisions distinct from the regulations at issue here"); *Ortiz-Santiago*, 2019 WL 2171368, at *6 (finding that "a failure to comply with the statute dictating the content of a Notice to Appear is not one of those fundamental flaws that divests a tribunal of adjudicatory authority"); *Ali*, *2019 WL 2147246*, at *2 ("join[ing] the BIA and a unanimous chorus of other circuits" by rejecting

the argument that, under *Pereira*, an NTA that "does not contain the time and place of the removal proceeding is invalid" and "a court utilizing such a notice fails to obtain subject matter jurisdiction at its inception"); *Karingithi*, 913 F.3d at 1160 (finding that "the regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction [and a] notice to appear need not include time and date information to satisfy this standard").

District courts in the second circuit have also declined to invalidate an immigration court's jurisdiction because the noncitizen's NTA failed to designate the date and time of the initial removal hearing. *See United States v. Maldonado*, 18-CR-308 (CBA), Mem. and Order at 29, (E.D.N.Y. 2019) (finding that "[b]ecause the jurisdiction of the immigration tribunal is contingent on the service of a regulatory Notice to Appear, not a statutory notice to appear, . . . a Notice to Appear that meets the specifications of 8 C.F.R. § 1003.15(b) and (c) is sufficient to confer jurisdiction on an immigration tribunal"); *Sigal v. Searls*, No. 1:18-CV-00389 EAW, 2018 WL 5831326, at *8 (W.D.N.Y. Nov. 7, 2018) (holding that defendant's *Pereira* argument lacked merit because *Pereira* addressed the "narrow question" of what must be contained in an NTA to trigger the "stop-time rule").

### B.  Support for Applying *Pereira* in Instant Case

District courts have held that "*Pereira* applies to a Notice to Appear outside of the stop-time rule context, including a Notice to Appear that functions as a charging document." *See United States v. Leon-Gonzalez*, 351 F. Supp. 3d 1026, 1031 (W.D. Tex. 2018).  These courts have found that an NTA that does not meet the statutory requirements under § 1229(a) is invalid and fails to vest authority in the immigration court.  *See, e.g., id.*; *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); *Erazo-Diaz*, 353 F. Supp. 3d at 873; *United States v.*

*Valladares*, No. A-17-CR-00156-SS, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018); *United States v. Zapata-Cortinas*, 351 F. Supp. 3d 1006 (W.D. Tex. 2018).

They have ruled that the statutory definition controls over the regulatory definitions. *See*, *e.g.*, *Zapata-Cortinas*, 351 F. Supp. 3d at 1015. In *United States v. Leon-Gonzalez*, the court concluded that:

> Congress unambiguously intended for Notices to Appear to always include information specifying the time and place of removal proceedings. Therefore, any regulation that conflicts with this unambiguous intent may not be given effect. [Defendant's] Notice to Appear was not a Notice to Appear because it lacked a date and time. Therefore, the immigration court lacked jurisdiction to lawfully remove [defendant] . . . .

351 F. Supp. 3d at 1037 (citations omitted).

The court in *United States v. Zapata-Cortinas* provided similar reasoning.

> [T]he Court must rely upon the plain language of the statute as well as the relevant Supreme Court precedent from *Pereira*. The statute clearly states that an NTA must contain the time and place of the hearing, and an NTA that lacks such information is not a notice to appear under section 1229(a). For that reason, this Court agrees with the other courts that have concluded that—in light of *Pereira*—a Notice to Appear for a removal proceeding must contain the removal hearing's time and place. Accordingly, the Court concludes that the NTA provided to Defendant prior to his 2010 removal was deficient and invalid.

351 F. Supp. 3d at 1017 (quotations and citations omitted).

They have also ruled that a later notice of hearing specifying the date and time of the initial removal hearing "does not cure a void notice to appear." *See*, *e.g.*, *Leon-Gonzalez*, 351 F. Supp. 3d at 1037; *Zapata-Cortinas*, 351 F. Supp. 3d at 1017 ("An invalid NTA does not become a valid NTA when a notice of hearing is served . . . ."). Nor does the defendant's attendance at his removal hearing remedy this fundamental jurisdictional defect. *See*, *e.g.*, *Leon-Gonzalez*, 351 F. Supp. 3d at 1028.

In *United States v. Virgen-Ponce*, the court dismissed the defendant's indictment for unlawful reentry on the grounds that his NTA was deficient—i.e., the NTA did not include the date and time of the initial removal hearing—rendering the underlying deportation "invalid." 320 F. Supp. 3d at 1166. It explained:

> The Court concurs from a practical standpoint Defendant clearly became aware of the time and date set for the immigration hearing because he was in custody at the time and was transported to the hearing. However, the Court must rely upon the plain language of the statute as well as the precedent set by the Supreme Court. The statute plainly states that the Notice of Hearing must contain the date and time of the hearing. Lack of such information deprives the alien of proper notice as required by § 1229(a). Since the Notice of Appearance in this case omits information required by the statute, the Notice is deficient. The immigration judge lacked jurisdiction over Defendant's case because of the deficient Notice. . . . Administrative proceeding held where the immigration court lacked jurisdiction are void.

*Id.*

The district court in *United States v. Valladares* stated its reasoning for dismissing the defendant's § 1326 indictment as follows:

> Because the notice to appear in this case failed to include the time and date of the removal proceedings, a valid charging document was never filed. Pursuant to 8 C.F.R. § 1003.14, the failure to file a valid charging document means that the immigration court did not have jurisdiction to order [defendant's] removal. Because jurisdictional defects render a judgment void, [defendant's] removal from this country was void. Consequently, the Government cannot meet an element of illegal reentry under § 1326, and the indictment against [defendant] must be dismissed.

2018 WL 6629653, at *8 (W.D. Tex. Oct. 30, 2018) (citations omitted); *see also Erazo-Diaz*, 353 F. Supp. 3d at 874–875 (dismissing the defendant's indictment for illegal reentry because his NTA, which stated that his removal hearing would be at a "date" and "time" "to be set," was deficient under § 1229(a)(1), and thus "[t]he immigration court did not have subject matter jurisdiction [and] the removal order was invalid").

## VI.    Applicability of 8 U.S.C. § 1326(d) Framework

Defendant argues that he is exempt from satisfying § 1326(d)'s requirement because his removal order was a legal nullity and therefore precludes the use of this removal order in his § 1326 prosecution.  Def. Mem. at 6.  "Thus," he contends, "the government cannot satisfy the plain language of § 1326, which applies only to non-citizens who reenter the United after having been 'denied admission, excluded, deported, or *removed.*'"  *Id.* (emphasis in original) (quoting 8 U.S.C. § 1326).

Courts differ as to whether a collateral attack by a § 1326 defendant under *Pereira* must be analyzed within the § 1326(d) framework.  *Compare Zapata-Cortinas*, 351 F. Supp. 3d at 1019 (stating that a "§ 1326 defendant must satisfy the requirements of § 1326(d) in order to collaterally attack the underlying removal order") *with United States v. Ortiz*, 347 F.Supp.3d 402, 2018 WL 6012390, at *407 (D.N.D. Nov. 7, 2018) (concluding that since the government cannot prove the "removal" element of the offense, "[d]efendant need not satisfy section 1326(d)'s strict requirements because the Immigration Judge lacked jurisdiction from the outset").

As *United States v. Erazo-Diaz* explained:

> District courts that have concluded that *Pereira* extends to other contexts are themselves divided, however.  Some have found that, because the immigration court lacked jurisdiction and could not issue a valid order of removal, a defendant need not show under § 1326(d) that he exhausted administrative remedies or that he was denied the opportunity for judicial review; in those cases, the defendant's collateral attack succeeds.  Others have found that, even though a notice is defective under Pereira, the defendant can waive that defect and must still show that he exhausted administrative remedies and was denied judicial review; a defendant's collateral attack can thus fail despite the defect.

353 F. Supp. 3d at 871 (citations omitted).

In *United States v. Maldonado*, the district court for the Eastern District of New York was emphatic that all collateral attacks on deportation orders pursuant to *Pereira* are subject to § 1326(d) review. 18-CR-308 (CBA), Mem. and Order, at 30. It declared that section 1326(d) "is the exclusive channel through which a defendant can challenge an underlying removal order" and that "Section 1236(d) could not be clearer—in order to challenge a deportation order, a defendant must satisfy [its] prerequisites." *Id*.

## VII.    Discussion of § 1326(d)'s Requirements

### A.  Exhaustion of Administrative Remedies and Deprivation of an Opportunity for Judicial Review

Defendant in the instant case appealed his removal order. The BIA denied his appeal in 2001. It is not alleged that the issue of improper service of his NTA was raised on appeal.

He did not appeal to the United States Court of Appeals for the Second Circuit nor seek any other judicial review by a habeas or other motion.

He argues that prior to *Pereira*, "both BIA and Second Circuit precedent squarely foreclosed the argument raised in the instant case. Thus, any attempt to satisfy [§ 1326(d)(1) and § 1326(d)(2)] would have been *futile*." Def. Mem. at 13 (emphasis added). In *Virgen-Ponce*, the court echoed this sentiment by holding that "defendant need not show that he exhausted administrative remedies because the immigration court proceedings were void. . . . 'Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, . . . or where the administrative proceedings themselves are void.'" 320 F. Supp. 3d at 1166 (quoting *United Farm Workers of Am., AFL-CIO v. Arizona Agr. Employment Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982)); *but see Zapata-Cortinas*, 351 F. Supp. 3d at 1024 (rejecting defendant's futility argument because "Congress specifically enumerated the

exhaustion requirements in § 1326(d), and the Court does not have the general authority to excuse the requirements based on equitable arguments").

*Larios-Ajualat* rejected the reasoning in *Virgen-Ponce*. The court denied the defendant's motion to dismiss his indictment under § 1326, after acknowledging his NTA was defective under *Pereira*, because he knowingly waived his right to obtain judicial review. 2018 WL 5013522, at *6. It found that:

> [D]efendant's right to obtain judicial review was not "eliminated" by defects in his removal proceeding . . . Congress made clear by adopting § 1326(d) that knowingly giving up the opportunity for judicial review in a removal proceeding precludes an alien from challenging the validity of the removal order in a § 1326 prosecution. The cases adopting the *Virgen-Ponce* reasoning nullify this limitation by declaring the removal order void for lack of subject-matter jurisdiction, and in doing so effectively ignore the limitations Congress has placed on their own jurisdiction.

*Id.* at *6–7 (citation omitted).

### B. Entry of Order of Removal Was Fundamentally Unfair

To demonstrate that a removal order was fundamentally unfair, defendant must show "both a fundamental procedural error and prejudice resulting from that error." *United States v. Sosa*, 387 F.3d 131, 138 (2d Cir. 2006) (quoting *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002)). The general standard for "prejudice" requires the noncitizen to show that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015) (quoting *United States v. Benitez–Villafuerte*, 186 F.3d 651, 658–59 (5th Cir.1999)). "In short, if the defendant was legally deportable and, despite the . . . errors, the proceeding 'could not have yielded a different result,' the deportation is valid for purposes of section 1326." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 659 (5th Cir. 1999) (quoting *United States v. Galicia–Gonzalez*, 997 F.2d 602, 603 (9th Cir.1993)).

Proving prejudice is difficult for this defendant. Any prejudice he suffered as a result of any defect in his NTA is likely to be considered "harmless." *See Larios-Ajualat*, 2018 WL 5013522, at *6 ("As the Supreme Court indicated in *Pereira*, the failure of a notice to appear to specify the date and time of a removal hearing could prejudice an alien by causing him to miss a hearing, by depriving him of the time or incentive to find counsel, or by depriving the alien (or counsel) of time to prepare for the hearing. . . . [A]ny prejudice from the notice's failure to specify the date and time of the hearing was harmless because Defendant was in fact able to attend and adequately participate in the removal hearing." (internal citations omitted)); *United States v. Fernandez*, 350 F. Supp. 3d 457, 467 (E.D. Va. 2018) (denying defendant's motion to dismiss § 1326 indictment despite "grave due process concerns that arise when a deportation order stemming from a notice to appear that fails to specify a time or place for the hearing, entered in the defendant's absence and without the defendant's knowledge" because "[n]onetheless, . . . defendant has not made the required particularized showing of prejudice").

## VIII.    Waiver of Subject Matter Jurisdiction

### A.  Waiver Generally

Defendant arguably waived any claim that the immigration court lacked jurisdiction based on a defect in his NTA. *See Qureshi v. Gonzales*, 442 F.3d 985, 990 (7th Cir. 2006) ("When a petitioner expressly concedes his removability as charged in the NTA, he waives any objection to the IJ's finding of removability, including the argument that the IJ lacked jurisdiction to find him removable.") (internal citation omitted); *United States v. Maldonado*, 18-CR-308 (CBA), at 27 (finding that defendant waived *Pereira* argument by conceding removability).

When the NTA was served on the defendant, he was advised orally in his native language of the date and time of his removal hearing. He later received a notice of hearing containing the

date and time of the hearing. Though he does not appear to have ever conceded removability, he appeared with counsel at the initial removal hearing, attended two subsequent hearings with counsel, and conceded through counsel that he was served with a charging document.

Some federal courts addressing this issue have refused to find waiver based on the general rule that challenges to subject matter jurisdiction can never be waived. *See*, *e.g.*, *Leon-Gonzalez*, 351 F. Supp. 3d at 1039 ("The Government's assertion that a non-Article III court is somehow exempt from the rule that subject matter-jurisdiction can never be waived is invalid. Indeed, as the Supreme Court has explained, '[s]ubject-matter jurisdiction properly comprehended . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived.'") (internal citations omitted) (alterations in original); *Valladares*, 2018 WL 6629653, at *8 (stating that the "rule that subject matter-jurisdiction can never be waived does not apply only to Article III courts").

The possibility of waiver remains an open question in the Second Circuit. *Nolasco v. Holde*r, 637 F.3d 159, 162 (2d Cir. 2011) (recognizing open question).

### B. Personal or Subject Matter Jurisdiction

Uncertainty remains as to "whether 'jurisdiction' in 8 C.F.R. § 1003.14 refers to personal jurisdiction, subject-matter jurisdiction, or both." *See*, *e.g.*, *Zapata-Cortinas*, 351 F. Supp. 3d at 1020 n.10; *cf.* Kit Johnson, *Pereira v. Sessions: A Jurisdictional Surprise for Immigration Courts*, 50 Colum. Hum. Rts. L. Rev. 1, 4 (2019) ("At the heart of the confusion is a failure to characterize the jurisdictional issue as one of personal jurisdiction or subject-matter jurisdiction. . . . [T]he characterization of the jurisdictional issue cannot be glossed over. The distinction matters greatly: Defects in personal jurisdiction are waived by appearance, while defects in subject-matter jurisdiction persist.").

"[N]ot every error is jurisdictional." *Ortiz-Santiago*, 2019 WL 2171368, at *5. "In recent years the Supreme Court has 'pressed a stricter distinction between truly jurisdictional rules, which 'govern a court's adjudicatory authority, and nonjurisdictional claim-processing rules, which do not.'" *Id.* (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)); *see also* Wright & Miller § 8316, *Determining Whether a Statutory Limit Is "Jurisdictional,"* 33 Fed. Prac. & Proc. Judicial Review § 8316 (2d ed.) ("The Court, with some embarrassment, has observed that 'jurisdiction . . . is a word of many, too many, meanings,' and has confessed that it, 'no less than other courts, has sometimes been profligate in its use of the term.' To clean up the confusion this profligacy has caused, the Court has declared that, to determine whether a statutory limitation is jurisdictional, a court should assess 'whether Congress has "clearly state[d]" that the rule is jurisdictional; absent such a clear statement, . . . courts should treat the restriction as nonjurisdictional in character.'" (internal citations omitted)).

Courts have mostly "shied away from taking a position on whether this is an issue of subject-matter jurisdiction or personal jurisdiction." Johnson, *supra*, at 4. Those that have spoken have reached different conclusions. *Compare Zapata-Cortinas*, 351 F. Supp. 3d at 1021 n.10 (noting that it "believes that subject-matter jurisdiction is the more appropriate comparison," but declining to resolve the issue) *with Ortiz-Santiago*, 2019 WL 2171368, at *5 ("While [the EOIR] may adopt rules and processes to maintain order, it cannot define the scope of its power to hear cases. What the Executive Office was doing was establishing exactly what it takes properly to commence a case before it. That decision is not one of jurisdictional significance in the same sense that complete diversity or the existence of a federal question is for a district court.").

As part of the "feverous debate" that has been circling the Supreme Court's decision in

*Pereira*, two recent articles attempting to answer this question reach opposite conclusions. *See*

Lonny Hoffman, *Pereira's Aftershocks*, at 2, 61 Wm. & Mary L. Rev. (forthcoming 2019);

Johnson, *supra*, at 5–6.

In "*Pereira v. Sessions: A Jurisdiction Surprise for Immigration Courts*," the author

argues that 8 C.F.R. § 1003.14 restricts the subject matter jurisdiction of immigration courts.

> So which is it? The *Pereira* jurisdictional issue must be one of subject-matter jurisdiction. To begin with, a plain reading of the relevant regulation indicates that it references subject-matter jurisdiction. On its face, 8 C.F.R. § 1003.14(a) concerns whether a particular case is properly before an immigration court. Without this propriety, an immigration court lacks authority to render any decisions regarding the issues raised. Any court action taken without this prescribed prerequisite is an extrajudicial act. This is the conceptual domain of subject-matter jurisdiction-- what the Supreme Court was speaking of when it stated that courts have a duty to ensure that their jurisdiction "defined and limited by statute, is not exceeded." . . . [T]he jurisdictional issue is not a matter of the person appearing before the court. It is, instead, an issue with the legally prescribed capacity of the court to act, and thus the subject-matter jurisdiction deficiency is non-waivable.

Johnson, *supra*, at 5–6 (citations omitted).

In *Pereira's Aftershocks*, another author takes the opposite view.

> Just as Congress has set the parameters of the authority it has vested in Article III courts in various statutory grants of original jurisdiction, it has done the same for immigration courts. But the relevant statute is not section 1229. It is section 1229a. And the language of section 1229a(a)(1) is clear in delineating the classes of cases that an immigration court can hear: "An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." This is the entire scope of an immigration court's subject matter jurisdictional authority.

Hoffman, *supra*, at 37.

IX.     **Conclusion**

The defendant received full timely notice of his hearings to determine removability. He participated fully in the hearings by the immigration judge. He received a full hearing, with no hint of prejudice or unfairness in immigration procedure.

The *Banegas Gomez* decision by Judge Livingston for the Second Circuit Court of Appeals seems to have made this conclusion uncontestable. It also makes deciding whether or not defendant waived his objection to the immigration court's jurisdiction unnecessary.

The motion to dismiss the indictment is denied.

This opinion denying a motion to dismiss is based on the special factual situation of a full and fair hearing after notice of the hearing.

Jack B. Weinstein
Senior United States District Judge

Dated: June 17, 2019
Brooklyn, New York